## YOUGHIOGHENY & O. COAL CO v. VERSTINE, HIBBARD & CO.

(Circuit Court. W. D. Pennsylvania. March 28, 1910.)

No. 116.

1. SALES (§ 99*)—CONTRACT—BREACH—RESCISSION.

Where plaintiff purchased certain coal from defendant to be delivered in installments, payment for installments delivered each month to be made by 60-day note about the 15th of the month following shipment, plaintiff's failure to send such note covering August shipments prior to September 19th, notwithstanding requests therefor, justify defendant in refusing to make further shipments and rescinding the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 264; Dec. Dig. § 99.*]

2. SALES (§ 418*)—CONTRACT—BREACH—MEASURE OF DAMAGES.

In an action for the seller's breach of a contract to deliver coal, the buyer's measure of damages is the difference between the contract price and the market price at the time when the installments contracted for should have been delivered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

Action by the Youghiogheny & Ohio Coal Company, a citizen of Ohio, against Verstine, Hibbard & Co., a citizen of Pennsylvania, in assumpsit. Judgment for defendant.

C. F. Taplin, for plaintiff.

John E. Laughlin, for defendant.

ORR, District Judge. The Youghiogheny & Ohio Coal Company brought this action against Verstine, Hibbard & Co. to recover damages for breach of a contract expressed in a letter and a shipping order by plaintiff and an acceptance by the defendant, as follows:

Pittsburgh, Pa., August 29th, 1907.

Verstine, Hibbard & Co., Brookville, Pa.

Gentlemen: Answering your esteemed favor of the 20th inst. and confirming conversation with your Mr. D. F. Hibbard this P. M. we will send you an order for shipment of coal to W. Cuthbert, Fuel & Tie Agent Grand Trunk Ry., Montreal, Quebec, via P. R. R. c/o Grand Trunk at Massena Springs, freight prepaid to Massena Springs. In settlement of which we will send you our 60 day note without interest dated the first of the month following that in which shipment is made. Of course it will be about the 15th of the following month of shipment before the bills can be checked up and note forwarded to you.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r indexes

Kindly make shipments as far as consistent in steel hopper cars. Of course, there are no restrictions on gondolas.

We respectfully ask that you use care in preparing this coal.

You will note the order instructs you to bill the coal "Prepaid," making the Youghiogheny & Ohio Coal Company shippers. The agent at Venango Scales will make draft on us for prepayment of same.

Kindly advise us if you wish to take on 18,000 tons of this for delivery between now and January 1st or to be filled as fast as you can ship it; the entire shipment of course to be delivered by the first of January.

We call your attention to sending postal notices to our Cleveland office, 801 Western Reserve Building and a duplicate to this office 910 House Building, Pittsburgh, Pa. We will take care of sending notices to the Grand Trunk Ry.

Kindly make an extra effort to get off as much as you can within the next ten days, as we have been delayed in getting started.

Very truly yours,        The Youghiogheny & Ohio Coal Co.,
By J. A. Paisley, Sales Agent.

Order No. 4657.                    Pittsburgh, Pa., August 29th, 1907.

Verstine, Hibbard & Co., Brookville, Pa.:

Please ship to W. Cuthbert, Fuel & Tie Agent, Grand Trunk Ry., Montreal, Quebec, via P. R. R. c/o Grand Trunk Ry., at Massena Springs, N. Y., freight prepaid to Massena Springs.

Make the Youghiogheny & Ohio Coal Co. shippers.

All run of mine coal possible until further notice.

Price 87—½ cents per net ton f. o. b. cars at mines.

Confirming telephone conversation with Mr. D. F. Hibbard.

The Youghiogheny & Ohio Coal Co.
Per ————————.

Please report shipments promptly to both Cleveland and Pittsburgh offices.

Brookville, Pa., Aug. 30, 1907.

Youghiogheny & Ohio Coal Co., 910 House Bldg., Pittsburg, Pa.

Gentlemen: We are in receipt of your valued favor of the 19th inst. with order and shipping instructions enclosed. thus confirming previous letter and telephone conversation.

We forward four steel hopper cars on order to-day.

We beg leave to state that we did not understand that the time limit on the 18,000 tons was January 1st. We will, however, make an effort to deliver that amount of tonnage within the time specified.

We feel confident that the quality of coal will prove satisfactory.

Thanking you for the order, we remain,

Yours very truly.                Verstine, Hibbard & Co.,
D. F. Hibbard.

Plaintiff avers performance on its part, but alleges breach by the defendant, in that about the middle of September, 1907, the defendant ceased to make further shipments of coal. The damages are laid at $3,287.06, being the amount plaintiff alleges it was required to pay in the market for coal called for by the contract in excess of the contract price. The defense is that the plaintiff did not make settlement and send its promissory note for the August shipments prior to September 19, 1907, which neglect, it is alleged, justified the cessation of shipments, and, further, that plaintiff was not required to pay to others for the coal afterwards purchased the amount claimed as damages. By a stipulation filed a jury was waived.

### Findings of Fact.

The plaintiff is a corporation of the state of Ohio engaged in the business of mining and shipping coal and of purchasing coal from other operators for resale to the trade. The defendant is a corpora-

tion of Pennsylvania owning and operating a coal mine near Brookville, Pa. A contract was made between them, as claimed by plaintiff, as set out above. So far as appears all negotiations prior to the contract were between J. A. Paisley, sales agent and duly authorized representative of the plaintiff, on the one hand, and D. F. Hibbard, representing the defendant, on the other hand. These two were the only witnesses called.

Immediately in pursuance of the contract defendant shipped in August 207.5 tons of coal to the amount of $181.17 at the contract price, and continued shipments until September 19, 1907, of 1,058.1 tons more to the amount of $925.84. In the meantime, plaintiff did not make any settlement for the August shipments, nor send its 60-day note therefor, as called for by the contract.

On September 9, 1907, defendant sent plaintiff an invoice of the August shipments. About September 15, 1907, the defendant asked Paisley, as the representative of the plaintiff, to send the note for the August shipments. Paisley replied: "Go on and ship the coal. I will take that up right away." At the same time, Hibbard told Paisley that the shipments would continue if the promissory note was sent. Paisley admits conversations by telephone about this time. While he denies that any one on behalf of the defendant asked for the promissory note, or threatened to stop shipments, yet he does not disclose the nature of the conversations admitted to have taken place. He also admits the receipt of the invoice for the August shipments.

Defendant continued to ship coal until September 19, 1907, and then stopped because the promissory note had not been sent. Defendant has never received such promissory note and has never been paid for any of the coal shipped under the contract. After defendant ceased shipments, plaintiff bought coal to complete a contract it had with the Grand Trunk Railway Company. To show a measure of damages, plaintiff offered to prove what that contract was and also the voucher of the railroad showing the price paid by it to the plaintiff. These offers were not received, and the plaintiff was limited to proof of the difference between the contract price and the market price; there being no other elements of special damages. Paisley was called on this point. He put the market price at $1.10 and over per net ton, which is a higher rate than plaintiff claimed in its statement. Hibbard, on the other hand, testified for defendant that the market price ranged from 85 to 90 cents per net ton. He said the coal which would have gone to the plaintiff, if shipments had not ceased, was sold for 85 cents, which was the best price that could be had. The testimony of Paisley was not as convincing as the testimony of Hibbard. The court finds therefore that the market price did not exceed 90 cents per net ton, at which price the same is now fixed.

On October 23 and 30, 1907, defendant wrote to plaintiff asking payment for the coal shipped in August and September. So far as appears the plaintiff paid no attention to such letters.

### Conclusions of Law.

The plaintiff has not supported its allegations of performance on its part by proof thereof. Payment should have been made by it at

the time fixed by the contract. Payment was not made and not sufficiently excused. Therefore it is not entitled to recover. Reybold v. Voorhees, 30 Pa. 116; Rugg & Bryan v. Moore, 110 Pa. 236, 1 Atl. 320; Easton v. Jones, 193 Pa. 147, 44 Atl. 264; Cresswell Ranch & Cattle Co. v. Martindale, 63 Fed. 84, 11 C. C. A. 33; National Surety Co. v. Long, 125 Fed. 887, 893, 60 C. C. A. 623.

Plaintiff, however, urges that:

"In a contract for the delivery of goods in installments and the payment for the installments at stated times, a failure by the buyer to make one of the stipulated payments does not allow the seller to repudiate the contract and refuse to make further shipments thereunder."

That proposition as it stands is not supported by the weight of authority because it omits reference to the intention of the vendee as disclosed by conduct or correspondence. Mersey Steel & Iron Co. v. Naylor, Benzon & Co., 9 Appeal Cases, 434, a leading English case decided by the House of Lords in 1884, is specially relied on by plaintiff because it has been apparently supported by some decisions of the federal courts. In that case the vendee refused to pay for the first installment because of an honest belief that a liquidator in bankruptcy was entitled to receive the payment. That case was cited in Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, to show that, if there were a rule in England that failure by the buyer to pay an installment did not entitle the seller to refuse future deliveries, it was not inconsistent with the principle then emphasized by the Supreme Court that a failure by the seller to deliver merchandise in the manner and at the time mentioned in the contract would prevent a recovery by him.

In the case at bar there appears to have been no excuse for the nondelivery of the note for the August shipments, although request was made expressly by telephone and impliedly by invoice. In some cases it has been held that even an excusable failure to pay may justify a refusal of the other party to go further. National Machine & Tool Co. v. Standard Shoe Machinery Co., 181 Mass. 275, 63 N. E. 900. There the failure to pay even the small sum of $90 promptly was held to be a breach.

The provision in the contract in the case at bar for the sending of promissory notes without interest must be considered an important one, in view of modern business methods by manufacturers and operators, and suggests the procurement of money by discounting such business paper to assist in carrying on defendant's mining operations. The contract contemplated the sending of the note so that it would reach the plaintiff by the 15th of September. When no note was received by the 19th of the month, it was justified in not making further shipments.

In view of the foregoing, little need be said about the measure of damages. That it is the difference between the contract price and the market price at the time when the installments should have been delivered is clear. Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 12 C. C. A. 306, and cases cited in the opinion of the court.

It is unnecessary to consider the other authorities cited by counsel. None are cases where the plaintiff has been allowed to recover when he has not proven as well as alleged performance on his part or sufficiently excused his nonperformance.

Therefore judgment must be entered in favor of the defendant and against the plaintiff.