[Civ. No. 3667. First Appellate District, Division One.—February 3, 1921.]

ANSEL M. EASTON, Appellant, v. BOSTON INVESTMENT COMPANY (a Corporation), Respondent.

[1] SURETIES—DEED OF TRUST—PROTECTION AGAINST LOSS OR LIABILITY—FORECLOSURE—PREVIOUS PAYMENT OF CLAIM.—Where a deed of trust was given as counter-security to protect a surety not only against loss and damage, but also against liability on a bond, it was not necessary for the surety to pay the claim on the bond before it could maintain an action to foreclose the deed of trust.

[2] ID.—WRITTEN NOTICE OF DEFAULT—LIMITATION OF TIME OF ACTION—MATERIAL CONDITIONS OF BOND.—Conditions in a bond requiring written notice of default and limiting the time within which an action may be brought thereon are material, and compliance therewith is a condition precedent to the right of recovery thereon.

[3] ID.—BANKRUPTCY OF SURETY—FILING AND ALLOWANCE OF CLAIM—COMPLIANCE WITH TIME LIMITATION OF BOND.—A provision of a bond limiting the time within which an action may be brought thereon is sufficiently complied with where bankruptcy proceedings are pending against the surety and a claim on the bond is filed and allowed by the master in chancery as a claim against the bankrupt within the time limited in the bond, since under such circumstances the institution of an action would be an idle and useless act.

[4] ID. — NOTICE OF DEFAULT — CONDITION PRECEDENT TO RECOVERY—WAIVER BY SURETY—EFFECT UPON LIABILITY OF COUNTER-SURETY. Compliance with a provision of a bond requiring written notice of default constitutes a condition essential to recovery on the bond, and such provision cannot be waived by the surety so far as the contingent liability of a counter-surety is concerned.

[5] ID.—RECOVERY ON COUNTER-SECURITY—COMPLIANCE WITH REQUIREMENTS OF BOND—BURDEN OF PROOF.—In an action by the assignee of a surety to foreclose a deed of trust given as counter-security to protect the surety against loss or liability on a bond, the plaintiff has the burden of showing that the surety availed itself of all the defenses which were available to it to defeat recovery on the bond.

[6] ID.—ALLOWANCE OF CLAIM AGAINST BANKRUPT—ORDER NOT CONCLUSIVE ON COUNTER-SURETY.—Where a deed of trust was given to indemnify a surety against loss or liability on a bond, an order in a bankruptcy proceeding allowing a claim on the bond against the bankrupt surety is not conclusive upon the grantor of the

deed of trust in an action of foreclosure by the assignee of the surety.

[7] JUDGMENTS—PARTIES—ESTOPPEL. — Judgments are conclusive and binding on parties and their privies, but as to all others they are neither *prima facie* nor conclusively binding.

APPEAL from a judgment of the Superior Court of San Mateo County.   George H. Buck, Judge.   Affirmed.

The facts are stated in the opinion of the court.

George Clark Sargent for Appellant.

Randolph V. Whiting for Respondent.

KERRIGAN, J.—This was an action to foreclose a deed of trust given by the respondent, Boston Investment Company, as counter-security to protect the Pacific Coast Casualty Company on a bond issued by it. Plaintiff is the assignee of the obligee in the bond. Judgment went in favor of the defendant, Boston Investment Company; denied to plaintiff the relief sought, and decreed that he had no right, title, or interest, lien, or claim in the subject of his attempted foreclosure. He appeals from this judgment.

The case was submitted to the trial court upon an agreed statement of facts, which showed that on December 2, 1912, one J. D. Gibbs was about to enter into a lease with Hale Bros. Incorporated affecting certain premises in San Francisco, in order to obtain which lease he was required to give to the lessor a bond in the sum of $5,000. To consummate the transaction four instruments were executed, all bearing the same date: The first was an agreement between the Investment Company and Gibbs, wherein it was recited that Gibbs was about to enter into the lease, and in order to secure the performance thereof the Casualty Company was about to execute its bond to the lessor; that it was agreed that the Investment Company should execute a deed of trust of the real property involved in this action to a trustee to indemnify the Casualty Company against loss or liability on its said bond.

7. Effect upon surety of judgment against principal, notes, 9 Ann. Cas. 154; Ann. Cas. 1915D, 400; 40 L. R. A. (N. S.) 698.

Second. Thereupon the lease was executed.

Third. Immediately thereafter the Casualty Company executed its bond, whereon Gibbs, the lessee, was principal, the Casualty Company was surety and the lessor was the obligee. This instrument recited the execution of the lease and the amount of the rent to be paid, and also provided that if the lessee should perform the covenants of the lease and pay the rent the obligation thereof should be void, otherwise to remain in full force and effect;

Fourth. Thereupon the Investment Company executed the deed of trust mentioned in the said agreement to a trustee for the Casualty Company, reciting therein that it was executed for the purpose of indemnifying the Casualty Company against "loss, liability, or damage" which it might sustain by reason of the bond.

After the execution of these instruments, and on June 3, 1915, the plaintiff became the owner of the premises leased to J. D. Gibbs, and the assignee of the bonds of the Casualty Company; and at that time by mesne conveyances one F. M. Gibbs had become the tenant of the premises. On June 1, 1917, default was made in the payment of rent, and said tenant was progressively in default from that time until the end of the lease, December 31, 1917.

On November 17, 1916, the Casualty Company was insolvent, and upon that day suit was commenced in the United States district court for the purpose of marshaling its assets. In due time a receiver was appointed, notice to creditors was published, and in August, 1917, plaintiff filed his claim in the sum of $5,000, which, upon reference to the master in chancery, was allowed for the sum of $2,925, appellant being ordered to elect either (first) to take as a general creditor of the insolvent Casualty Company, or (second) to dismiss his claim without prejudice and be allowed to join the receiver and the respondent in a proper proceeding to realize upon the deed of trust by foreclosure. This report was thereafter confirmed by the court.

On August 11, 1919, the court in which the bankruptcy proceedings were pending directed the receiver to execute to the plaintiff an assignment transferring to him all the rights of the Casualty Company under the deed of trust and against the respondent in relation to the lease. These assignments were delivered to plaintiff on August 20, 1919,

and he is now the owner and holder of all rights of the Casualty Company in relation to the lease.

[1]  The contention of the appellant that, as the deed of trust for the benefit of the Casualty Company protected it not only against loss and damage, but also against liability, it was not necessary to pay appellant's claim before it could maintain an action to foreclose the deed of trust executed by the Investment Company, we think must be sustained.

In *McBeth* v. *McIntyre,* 57 Cal. 49, an indemnity bond to a constable, protecting him "against all damages, expenses, costs, and charges and against all loss and liability," was held to be an indemnity bond not only as against actual damage, etc., "but also against all liability therefor." So in *Showers* v. *Wadsworth,* 81 Cal. 270, [22 Pac. 663], it was said: "The indemnity was against liability, and hence there was a right of recovery upon the contract as soon as the liability was incurred."

That this is the law is not disputed, but the respondent contends (1) that no notice was given to the Casualty Company or its receiver of default in payment of the rent, and (2) that no action on the bond of the Casualty Company was commenced against the surety on or prior to March 31, 1918, and, therefore, the appellant may not recover in this action.  [2]  It is true that conditions in a bond requiring written notice of default, and limiting the time within which an action may be brought thereon, are material, and compliance therewith is a condition precedent to the right of recovery thereon.  (*California Sav. Bank of San Diego* v. *American Surety Co.,* 87 Fed. 118.  See, also, *Riddlesberger* v. *Insurance Co.,* 7 Wall. 386, [19 L. Ed. 257, see, also, Rose's U. S. Notes]; *National Surety Co.* v. *Long,* 125 Fed. 887, [60 C. C. A. 623].)

[3]  No separate or independent action on the bond was in fact commenced against the Casualty Company prior to March 31, 1918, or at any time; but it appears from the statement of facts that prior to that time all the necessary steps had been taken to have the claim of the plaintiff allowed and that it was allowed and confirmed as a claim against the bankrupt by the master in chancery of the United States district court.  No action against the Casualty Company upon the bond could have been commenced without the permission of the court in which the

bankruptcy proceedings were pending, and as such action would have availed the plaintiff no further or better relief than was obtainable in the bankruptcy proceeding, its institution would have been an idle and useless act, which the law never requires. We think the filing of the claim and the proceedings thereon in the bankrupt's estate constituted all that was contemplated or could be reasonably required by the provision of the bond under discussion.

[4] The other point made by the respondent in this behalf, namely, that the record fails to show that the Casualty Company was served with written notice of default in the payment of rent, and hence was not liable on its bond—for which reason the plaintiff may not prevail in this action—raises a more serious question.

The condition reads: "Provided, however, and upon the following express conditions: First . . . that in the event of any failure upon the part of the lessee to pay any installment of the rent provided for in said lease, written notice thereof shall within five days after such monthly installment of rent becomes payable, be delivered to the said surety [the Casualty Company] at its office in the city of San Francisco, state of California." Compliance with this condition of the bond constituted a condition essential to recovery thereunder (*California Sav. Bank of San Diego* v. *American Surety Co., supra; Riddlesberger* v. *Insurance Co., supra; National Surety Co.* v. *Long,* 125 Fed. 887, [60 C. C. A. 623]) ; and it is a provision which could not be waived by the Casualty Company so far as the contingent liability of this respondent to the Casualty Company is concerned. The respondent undertook to indemnify the Casualty Company against loss or liability suffered by it under the terms and conditions of its contract of suretyship; and if the Casualty Company failed to avail itself of a complete defense to the proceeding against it, certainly neither it nor its assignee may recover over against the counter-surety. [5] And in order to recover in this action the burden was on the plaintiff to show that the Casualty Company availed itself of this defense. The plaintiff, as assignee of the Casualty Company, seeking to recover against the Boston Investment Company on the contract with the Casualty Company, must show performance by the Casualty Company of all the conditions on its part to be performed.

Neither can it be successfully said that the claim filed in August, 1917, with the receiver in the bankruptcy proceeding amounted to the notice of default contemplated by the bond.  It was not notice of such default in the payment of rent due in the previous months of June and July, nor even for the month of August, since, from the record, it cannot be said when in that month the claim was filed, nor whether within five days from the occurrence of the default. And it certainly could not be regarded as a five-day monthly notice for each month thereafter until the termination of the lease in December.

[6] Coming now to the last point we shall consider, it may be conceded that the order in bankruptcy allowing the claim of appellant is in effect a judgment; still we find ourselves unable to agree with the appellant that the respondent is concluded by the judgment.  [7] How far a judgment or decree against one party is evidence against another standing in the relation of the parties here is a question involved in much confusion; but the general rule appears to be that judgments are conclusive and binding on parties and their privies, but as to all others, that they are neither *prima facie* nor conclusively binding, for the reason that it would be unjust to bind a person by any proceeding in which he had no opportunity to make a defense, of offering evidence, of cross-examining witnesses, or of appealing if he were dissatisfied with the judgment. It seems to be generally conceded, however, that wherever a surety has contracted with reference to one of the parties in some suit or proceeding in the courts he is concluded by the judgment.  Thus a judgment against a defendant is conclusive upon his bail.  The sureties upon an injunction bond assume such a connection with the suit that they are concluded by a judgment in a suit upon the bond.  The same will apply against sureties who have become parties to a bond for the redelivery of property, or the release of attached property; to the sureties upon the bond of an executor or administrator or guardian.  Likewise, if a surety has undertaken to perform a decree or judgment, or to pay any balance which shall be found to be due by the principal to the obligee, he is bound by the judgment or decree rendered.  In all such cases the judgment is binding upon the surety unless he can show that it was obtained

by fraud or collusion (*Irwin* v. *Backus,* 25 Cal. 214, 223, [85 Am. Dec. 125]; Freeman on Judgments, 4th ed., sec. 180; 32 Cyc. 136). Those cases are sometimes said to constitute an exception to the rule that only parties to an action are bound thereby; while again it is said that they do not in fact constitute an exception to the general rule at all, but are based upon a fair and reasonable interpretation of the contract. However that may be, here the undertaking, it is clear, is general, indemnifying merely against loss or liability arising under the bond, and it does not come within the terms of the cases just noticed. The respondent, therefore, is not affected by the judgment in the bankruptcy proceeding.

In *Irwin* v. *Backus, supra,* it is stated that, as a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal, but administration bonds form an exception to this general rule. "There can be no doubt that where a surety undertakes for the principal that the principal shall do a specific act, to be ascertained in a given way, as that he will pay a judgment, that the judgment is conclusive against the surety; for the obligation is express that the principal will do this thing, and the judgment is conclusive of the fact and extent of the obligation. As the surety in such cases stipulates without regard to notice to him of the proceedings to obtain the judgment, his liability is, of course, independent of any such fact. . . . But this rule rests upon the terms of the contract. In the case of official bonds, the sureties undertake in general terms that the principal will perform his official duties. They do not agree to be absolutely bound by any judgment obtained against him for official misconduct, nor to pay every such judgment. They are only held for a breach of their own obligations. It is a general rule that no party can be so held without an opportunity to be heard in defense. This right is not divested by the fact that another party has defended on the same cause of action and been unsuccessful. As the sureties did not stipulate that they would abide by the judgment against the principal, or permit him to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights. They have a right to contest with the plaintiff the

question of their liability; for to hold that they are concluded from this contestation by the suit against the sheriff is to hold that they undertook for him that they would be responsible for any judgment against him which might be rendered by accident, negligence, or error, instead of merely stipulating that they would be responsible for his official conduct.'' (*Pico* v. *Webster*, 14 Cal. 203, [73 Am. Dec. 647].) Accordingly, the court in that case held that the judgment against the principal was inadmissible in an action against his sureties. (See, also, *Ballentine & Sons* v. *Fenn*, 84 Vt. 117, [40 L. R. A. (N. S.) 698, and notes, 78 Atl. 713]; 32 Cyc. 136.)

The judgment is affirmed.

Richards, J., and Bardin, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 4, 1921.

All the Justices concurred.