[S. F. No. 11518. In Bank.—July 27, 1927.]

MARIE KRUGER, Respondent, v. CALIFORNIA HIGHWAY INDEMNITY EXCHANGE, Appellant.

[1] ACCIDENT INSURANCE—JUDGMENT—PLEADING—ISSUANCE OF EXECUTION AND RETURN UNSATISFIED — DENIAL ON INFORMATION AND BELIEF.—In an action to recover upon a policy of accident insurance the amount of a judgment obtained against the *insured*, a denial in the answer, for want of information or belief, that any execution had been issued on said judgment may be disregarded, as the issuance of the execution and return thereof is a matter of record.

[2] ID. — CONSTRUCTION OF POLICY — AGREEMENT TO PAY INJURED PARTY—NOTICE.—In such a case, where the policy provided that the insurer would pay the injured party direct the amount of

---

1. Denial on information and belief, when permissible, note, 70 Am. Dec. 625; 21 Cal. Jur. 150; 21 R. C. L. 458. Denials upon information and belief or of knowledge or information sufficient to form belief of matters presumptively within pleader's knowledge, note, 30 L. R. A. (N. S.) 771. See, also, 21 Cal. Jur. 156.

2. Right of injured party to recover on automobile insurance policy, notes, 6 A. L. R. 381; 13 A. L. R. 136; 19 A. L. R. 881; 23 A. L. R. 1474; 28 A. L. R. 1303; 41 A. L. R. 516.

any judgment obtained against the insured, irrespective of any financial responsibility on the part of the latter, the insurer is bound by the judgment whether it has notice of the action, or not, even though it is not a party to the action, where there is no fraud in the procurement to the judgment.

[3] ID.—NOTICE OF ACTION TO INSURER—AGREEMENT OF INSURED— RIGHT OF INJURED PARTY.—Where the policy provides in such case that the subscriber shall immediately forward to the insurer every summons, notice, or other process as soon as the same is served upon him, failure of the insured to comply with this provision does not affect the injured party's right to have a judgment paid directly to him.

[4] ID.—NATURE OF SECURITY—RIGHT OF MUNICIPALITY TO PRESCRIBE. A municipality has the right within reasonable limits to prescribe the nature of a security to be given by those operating vehicles for hire upon its public streets, and there is nothing unreasonable in the provision of an ordinance requiring the operator of such a vehicle to protect the public by the bond or policy of insurance required therein and in the manner provided.

(1) 31 Cyc., p. 200, n. 6. (2) 36 C. J., p. 1130, n. 96. (4) 42 C. J., p. 711, n. 50.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

Barry J. Colding, Theodore Hale and B. P. Gibbs for Appellant.

E. J. Tremont and J. Clark Benson for Respondent.

CURTIS, J.—Action brought to recover upon a policy of insurance. The policy was issued by the appellant, the California Highway Indemnity Exchange, as insurer, to one John E. Delaney, the insured, referred to therein as the "subscriber." It appears from the complaint that by an ordinance of the city and county of San Francisco known as the "Jitney Bus Ordinance" it was provided that it should be unlawful for any person to drive a "jitney bus" in said municipality without first procuring from the board of police

4. See 3 Cal. Jur. 797.

commissioners a permit to operate the same, and, as a prerequisite to obtaining such permit, it was necessary for the applicant therefor to file a bond or policy of insurance with said board, insuring the owner of said "jitney bus" against any loss by reason of damage that might result to any person from the operation of said automobile. Said policy to be limited to $5,000 as damages for injury or death of one person injured or killed "and said policy shall guarantee payment of any final judgment rendered against the said owner or lessee of said jitney bus (within the above-mentioned limits), irrespective of the financial responsibility or any act or omission of said jitney bus owner or lessee"; that in pursuance of said ordinance and for the purpose of obtaining from said police board a permit to operate a "jitney bus" in said city and county, said John E. Delaney procured the said policy of insurance from appellant and filed the same with the said board of police commissioners; that thereafter, while said policy of insurance was in full force and effect, said Delaney negligently drove said automobile against said plaintiff, the respondent herein, causing injuries to her person; that thereafter said plaintiff brought suit against Delaney to recover damages for the injuries sustained and in said action recovered judgment against said Delaney in the sum of $7,750, together with interest and $15 costs; that execution was issued on said judgment and returned unsatisfied and that nothing has been paid thereon and the same is in full force and effect and wholly unsatisfied; that demand has been made upon defendant to pay said judgment and defendant has refused to pay the same. The prayer of the complaint is for judgment against defendant in the sum of $5,015. A copy of said policy of insurance was annexed to the complaint and by proper reference made a part thereof. It purports upon its face to be issued in compliance with the provisions of said "jitney bus" ordinance. The provisions of the policy inserted therein for the purpose of having the same comply with said ordinance are in part as follows:

"It is hereby understood and agreed that in the event a final judgment covering any loss or claim under this Policy is rendered against the subscriber, the Exchange guarantees the payment of said judgment direct to the plaintiff securing such judgment, irrespective of any financial responsibility

on the part of the subscriber; provided that any action by the said plaintiff to recover under this clause is commenced within twelve months next after such final judgment shall have been rendered, or where such limitation of time is prohibited by the laws of the State wherein this Policy is issued, then and in that event no suit or action shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State. The Exchange does not prejudice by this condition any defense against such loss or claim that it may be entitled to make under this Policy in so far as it relates to any action brought against the Exchange by the subscriber. In all other respects the terms, limits and conditions of this policy remain unchanged.''

[1] The answer of the defendant denied that Delaney negligently or otherwise or at all drove his automobile against plaintiff as a result of which plaintiff sustained any injury. It also denied, for want of information or belief, that any execution had been issued on said judgment, but as the issuing of an execution and return thereof was a matter of record, this denial may be disregarded. As a second and separate defense to said action said defendant set forth in its answer that it did not know of the existence of the action of Marie Kruger against John E. Delaney, being the action in which said judgment was rendered, until more than six months after the rendition thereof, when demand was made upon it for the payment of the sum of $5,015 with interest thereon from July 27, 1923, the date of said judgment. It was further set forth by defendant in its second defense that the policy of insurance issued to Delaney provided that if suit were brought against Delaney to enforce any claim for damages on account of any accident covered by said policy that Delaney would immediately forward to the office of defendant ''every summons, notice or other process'' served upon him and the defendant would defend such suit in the name and on behalf of Delaney or settle the same. An inspection of the copy of the policy annexed to the complaint discloses that such a provision was contained in and was made a part of said policy. The defendant further set forth in said second defense that Delaney failed to comply with this provision of the policy, and furthermore, that neither Delaney nor the plaintiff herein nor anyone notified the defendant or any of its officers

or representatives of the institution or pendency of said action or of the default of defendant. It is then set forth that Delaney had a good and sufficient defense to plaintiff's cause of action in that he did not negligently drive said autobus, as alleged in said complaint, against plaintiff, but that the injuries sustained by the plaintiff, if any were sustained, were proximately caused by the negligence of said plaintiff; that plaintiff refrained for more than six months after the rendition of said judgment from notifying the defendant, appellant herein, of the rendition of the same; that immediately on learning of the rendition of said judgment appellant applied, under section 473 of the Code of Civil Procedure, to have the default of Delaney for failure to answer said complaint set aside; that said motion was denied for the reason that it was not made within the period of six months after the rendition of said judgment, and that plaintiff well knew prior to the time she filed her said action against Delaney that the appellant herein was the legal representative of Delaney, and notwithstanding said knowledge she refrained from notifying defendant of the pendency of her action against Delaney for more than six months after the rendition of said judgment.

The answer also contained a third defense, in which, by proper reference thereto, it made the allegations of the second defense a part of the third defense, and further alleged that "it had a complete and meritorious defense against the said John E. Delaney, . . . for any loss that he may have sustained under said policy, by reason of his failure to notify this defendant of the pendency of said action No. 136106" (the action in which said judgment was rendered). It was then alleged: "That in so far as said 'Jitney Ordinance' requires payment direct to the plaintiff procuring a final judgment against the subscriber (Delaney), irrespective of any financial responsibility on the part of the subscriber, or any act or omission on his part, said 'jitney ordinance' is unconstitutional and in violation of Article XIV (Section 1) of the Amendments to the Constitution of the United States, and Section 13 of Article I of the Constitution of the State of California, in that said Ordinance attempts to take property without due process of law and denies to this defendant the equal protection of the laws."

Upon the filing of said answer the plaintiff filed a general and special demurrer thereto, and a motion to strike out certain parts of the second and third defense and a motion for judgment upon the pleadings. The general demurrer went to the answer as a whole. The special demurrer was directed to the second and third defense only and set forth a number of particulars in which it was claimed that each of said defenses was ambiguous, uncertain, and unintelligible. These matters all came on for hearing before the court at the same time, and, as recited in the judgment, "having been duly argued and submitted by counsel for said parties and this Court having fully considered all of said matters," judgment was ordered for plaintiff as prayed for in her complaint. From this judgment the defendant has appealed.

[2] We will first consider the motion for judgment on the pleadings. If the action of the court in granting this motion is sustained, then whatever rulings it may have made regarding the demurrers and the motion to strike out portions of the answer are of no consequence. We will consider the combined defenses made by appellant in the first and second defenses of its answer. As we view this defense it appears to us that the sole question presented thereby is whether the judgment procured by respondent herein in the action of *Kruger* v. *Delaney* is conclusive upon appellant in the present action, or has appellant, under all the facts and circumstances shown by the pleadings, the right to again litigate the question as to the negligence of Delaney and whether such negligence was the proximate cause of respondent's injuries. Respondent claims that under the provisions of the policy quoted above, appellant guaranteed the payment to her of any judgment which she might secure against Delaney. Respondent relies in support of this contention upon the following language of the policy contained in the above quotation therefrom: "It is understood and agreed that in the event a final judgment covering any loss or claim under this Policy is rendered against the subscriber (Delaney), the Exchange (Appellant) guarantees the payment of said judgment direct to the plaintiff securing such judgment, irrespective of any financial responsibility on the part of the subscriber." It would be difficult to frame language more simple or

direct than this language. It can have but one meaning, and that is that appellant guaranteed the payment to the party securing the same of any judgment rendered against Delaney and covering any loss or claim under said policy. The undertaking is to pay the judgment to the party injured and not the damages sustained nor the loss incurred as a result of the injury. It is true plaintiff could have joined appellant as a defendant with Delaney in her action against the latter (*Milliron* v. *Dittman,* 180 Cal. 443 [181 Pac. 779]), but independent of the policy she had a right of action against Delaney alone for any injury she may have sustained by the latter's negligence, and under the terms of the policy the appellant guaranteed the payment of any judgment she might so secure against Delaney. Appellant's liability was to pay the judgment, and in a contract of that character the promisor is bound by the judgment whether he have notice of the action or not, even though he is not a party thereto. "The general rule appears to be that judgments are conclusive and binding on parties and their privies, but as to all others they are neither *prima facie* nor conclusively binding, for the reason that it would be unjust to bind a person by any proceeding in which he had no opportunity to make a defense, or offering evidence, of cross-examining witnesses, or of appealing if he were dissatisfied with the judgment. Indemnity contracts against loss or liability are sometimes said to constitute an exception to this rule, while again it is said that they do not in fact constitute an exception at all, but are based upon a fair and reasonable interpretation of the contract. It seems to be generally conceded, however, that wherever a surety has contracted with reference to one of the parties in some suit or proceeding in the courts, he is concluded by the judgment. . . . Furthermore, if a surety has undertaken to perform a judgment, or to pay any balance which shall be found to be due by the principal to the obligee, he is bound by the judgment rendered. In all such cases the judgment is binding upon the surety unless he can show that it was obtained by fraud or collusion." (13 Cal. Jur., pp. 996, 997; *Easton* v. *Boston Investment Co.,* 51 Cal. App. 246, 251 [196 Pac. 796]; *Irwin* v. *Backus,* 25 Cal. 214; *Pico* v. *Webster,* 14 Cal. 202, 204 [73 Am. Dec. 647].) In the last of these cases it is said: "There can be no doubt

that where a surety undertakes for the principal, that the principal shall do a specific act, to be ascertained in a given way, as that he will pay a judgment, that the judgment is conclusive against the surety; for the obligation is express that the principal will do this thing, and the judgment is conclusive of the fact and extent of the obligation. As the surety in such cases stipulates without regard to notice to him of the proceedings to obtain the judgment, his liability is, of course, independent of any such fact.'' In 14 Ruling Case Law, page 63, the rule is stated as follows: ''It should also be noted that if a person enters into a contract of indemnity whereby he expressly agrees to become responsible for the result of a litigation, or if, by operation of law, such a responsibility is cast upon him without any agreement, he will, in the absence of fraud or collusion, be conclusively bound by the judgment rendered, whether he had notice of the action in which it was entered or not.''

A clear and comprehensive statement of the rule is to be found in the case of *Conner* v. *Reeves*, 103 N. Y. 530 [9 N. E. 440], where the court said: ''The covenantor, in an action on a covenant of general indemnity against judgments, is concluded by the judgment recovered against the covenantee from questioning the existence or extent of the covenantee's liability, in the action in which it was rendered. The recovery of a judgment is the event against which he covenanted, and it would contravene the manifest intention and purpose of the indemnity to make the right of the covenantee to maintain an action on the covenant to depend upon the result of the retrial of an issue which, as against the covenantee, had been conclusively determined in the former action, 'always, however, saving the right, as the law must in every case where the suit is between third persons, to contest the proceeding on the ground of fraudulent collusion, for the purpose of charging the surety.'' We also find in the case of *Pioneer Sav. & Loan Co.* v. *Bartsch*, 51 Minn. 474 [38 Am. St. Rep. 511, 53 N. W. 764], a case cited by appellant, the same principle stated, as follows: ''Hence, if a surety stipulated for any particular method by which the liability of his principal or of himself shall be fixed, he is bound by it. If he has undertaken either expressly or by implication from the position which he had assumed with reference to pending liti-

gation, to be responsible for the result of a suit between others, to which he is not a party, and to which he has not been made privy by notice and an opportunity to defend, then, in the absence of fraud or collusion, the judgment against the principal alone would be conclusive evidence against him of every fact which it was necessary to find to recover such judgment. This would be because he had so contracted.'' We find nothing in any of the authorities cited by appellant which in any way conflicts with the rule enunciated above and we must therefore conclude that as appellant makes no claim that the judgment rendered in respondent's favor against Delaney was procured by either fraud or collusion it is binding and conclusive upon appellant, notwithstanding it was not a party to said action and had no notice of the pendency thereof until after the rendition of said judgment. It is liable for the payment of said judgment by reason of its expressed undertaking guaranteeing the payment of the same.

[3] Appellant seeks to avoid the force of the foregoing rule by a reference to the terms of the policy wherein it is provided that the insured or subscriber (Delaney) agreed to immediately forward to appellant every summons, notice, or other process as soon as the same were served upon him and that Delaney failed to perform this provision of the policy. This failure on the part of Delaney to forward to appellant the papers served upon him would undoubtedly be a good defense to an action brought upon the judgment by Delaney against appellant, but it is without effect in the present action brought by respondent. Appellant's undertaking to pay the judgment to plaintiff is absolute and is not conditioned upon Delaney's agreement to forward to appellant said papers or any papers which may be served upon him. The latter's failure to perform his part of the agreement cannot in any way affect appellant's liability to third persons expressly and unconditionally assumed by the terms of the policy. In our opinion, therefor, the allegations of the first and second defense of appellant's answer were insufficient to constitute any defense to the cause of action set forth in the complaint .herein.

[4] The third defense of the answer, as we have already seen, seeks to raise the constitutionality of the so-called ''jitney bus ordinance'' of the city and county of San

Francisco. In the case of *In re Cardinal,* 170 Cal. 519, 524 [L. R. A. 1915F, 850, 150 Pac. 348], the validity of this ordinance was sustained by this court, and at that time, the court said: "We see no reason to doubt the power of the state, or any county or municipality, in the exercise of its police power of regulation, to require security in the shape of a bond or insurance policy from its licensees in all cases where the giving of such security may fairly be held to be a reasonable requirement for the protection of the public." The particular objection which appellant now makes to such ordinance was not directly involved nor considered by the court in the case of *In re Cardinal, supra.* Appellant's claim that under its right to contract, as protected by constitutional enactments, it had the right to enter into a contract to indemnify licensees under said ordinance against loss through accident or otherwise in the operation of their "jitney busses" and to provide in such contracts that it shall have notice and an opportunity to defend as a condition precedent to its liability, and that if the ordinance deprives it of this right, it is unconstitutional in that respect. Appellant's argument, we think, is predicated upon a false premise. Its right to enter into contracts given under the state and national constitutions does not extend to every kind and character of contract. It would have no right to contract to operate a railroad or conduct a banking business, as it is prohibited by statute from entering into such contracts. Even an individual whose right to enter into a contract is protected by the constitution, at least to the same extent as that of appellant, cannot become a party to every kind and character of contracts. In fact, an individual is prohibited by this identical ordinance of the city and county of San Francisco from entering into a contract as a surety on a bond required thereunder and this provision of the ordinance has been sustained by this court. "It is suggested that the requirement that the bond be given by a responsible surety company or association authorized to do business under the laws of the state of California, to the exclusion of personal sureties, renders the provision invalid. We know of no constitutional right that one has to give any particular kind of security. A legislative body having the right to require the giving of security necessarily has the right to

prescribe the kind that shall be given, with the limitation always, of course, that its provisions in this regard shall not be unreasonable, . . . " (*In re Cardinal, supra,* p. 526). If, then, individuals can be excluded from entering into contracts of surety by the terms of said ordinance and by such exclusion there is no invasion of their constitutional rights to enter into contracts, it can hardly be successfully contended that the appellant, a creature of the law, has any constitutional right to enter into the contracts of indemnity, provided for by the ordinance, without limitation or restriction. The municipality undoubtedly has the right within reasonable limits to prescribe the nature of the security to be given by those operating vehicles for hire upon its public streets. There is nothing unreasonable in the provisions of the ordinance requiring the operator of such a vehicle to protect the public by the bond or policy of insurance required therein and in the manner as required. There was nothing obligatory upon the appellant requiring it to issue such a policy as it did. The policy was issued freely and voluntarily and without coercion on the part of anyone. It can with perfect safety be assumed that appellant was familiar with the terms of said ordinance and expressly contracted in reference thereto and agreed to be bound by those provisions of the policy inserted therein in compliance with the requirements of the ordinance. It is not unreasonable to assume that the premium charged upon such a policy was fixed in reference to the extent of the liability incurred by appellant in issuing the same. To now hold that the ordinance is void and appellant released from its obligations under the policy of insurance would be to grant it immunity from its voluntary contracts entered into for an adequate and valuable consideration under the guise of protecting its constitutional rights. As already seen, the ordinance in no way invaded appellant's constitutional rights. On the other hand, the liability which respondent now seeks to enforce against appellant is one it voluntarily assumed. The allegations of appellant's third defense presents no legal defense to the enforcement of said liability.

From the foregoing it is apparent that the answer of appellant failed to state facts sufficient to constitute a defense to said action. The judgment upon the pleadings,

therefore, must be sustained. As already stated, it will not be necessary for us to consider the action of the trial court, either upon the demurrers or upon the motion to strike out portions of the answer, for whatever action the court may have taken in these matters could not affect the validity of the order granting the motion for judgment upon the pleadings nor the judgment rendered thereon.

The judgment is affirmed.

Preston, J., Langdon, J., Waste, C. J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.